IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RESSA ADAMS, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 06-1427 |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 10 and 12). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 11 and 13). Plaintiff also has filed a Reply Brief. (Docket No. 14). After careful consideration of the submissions of the parties, and for the reasons discussed below, Plaintiff's Motion (Docket No. 10) is denied and Defendant's Motion (Docket No. 12) is granted.

### I. BACKGROUND

Plaintiff has brought this action under 42 U.S.C. § 405(g), for review of the final

1

decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401-433.

On November 30, 2004, Plaintiff protectively filed the instant application for DIB alleging disability since August 20, 2002 due to a back injury, fibromyalgia, and arthritis. (R. 45-59, 90, 91). The state agency denied Plaintiff's application. (R. 33-39). At Plaintiff's request, Administrative Law Judge David Hatfield ("ALJ") held a hearing on March 21, 2006, at which time Plaintiff, who was represented by counsel, and a vocational expert testified. (R. 308-41). On May 15, 2006, the ALJ denied Plaintiff's application for benefits, finding that Plaintiff was not disabled under the Act. (R. 13-25). The Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision. (R. 6-9). After thus exhausting her administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. Plaintiff raises two main issues on appeal:

> 1. Whether the ALJ erred in determining that Plaintiff's mental-health impairment was not severe. See Pl.'s Br. at 7-14.
>
> 2. Whether the ALJ improperly relied on the vocational expert's response to an inaccurate hypothetical question in concluding that Plaintiff was not disabled. Id. at 15.

2

## II. LEGAL ANALYSIS

### A. Standard Of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial

gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record, may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

B. Whether The ALJ Erred In Determining That Plaintiff's Depression Was Not A Severe Impairment

Plaintiff does not dispute the ALJ's findings regarding her physical limitations. Pl.'s Br. at 13-14. Rather, Plaintiff argues that the ALJ erred at Step 2 of the sequential evaluation process in determining that her depression is a non-severe impairment. Pl.'s Br. at 7-14. Plaintiff's argument is without merit.[1]

---

[1] I note that the ALJ ruled against Plaintiff at Steps 4 and/or 5 of the sequential evaluation process, after concluding that her residual functional capacity was sufficient to enable her to perform her past relevant work as an alarm dispatcher and/or to perform certain other sedentary

The step-two inquiry into an impairment's severity "is a *de minimis* screening device to dispose of groundless claims." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). As set forth in 20 C.F.R. § 404.1521(a), an impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. The regulations define basic work activities as the abilities or aptitudes necessary to do most jobs. 20 C.F.R. § 404.1521(b). Thus, an impairment is not severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. Newell, 347 F.3d at 546; Mays v. Barnhart, 78 F. App'x 808, 811 (3d Cir. 2003); S.S.R. 85-28. Any doubt as to whether the step-two showing has been made must be resolved in favor of the claimant. Newell, 347 F.3d at 546-47.[2]

In cases involving mental impairments, the Social Security Administration Regulations set forth a specific technique for determining whether the mental impairment is severe. 20 C.F.R. § 404.1520a.[3] Under this technique, if the ALJ

---

work existing in the economy. The ALJ moved past Step 2 of the evaluation after concluding that Plaintiff's degenerative disc disease of the lumbar and thoracic spine, osteoarthritis of the lumbar spine, and fibromyalgia were severe. (R. 18-19). Plaintiff, however, argues that the ALJ should have found her depression to be severe as well and that his failure to do so tainted the rest of his analysis. Cf. Kirk v. Comm'r of Soc. Sec., 177 F. App'x 205, 207 n.2 (3d Cir. 2006).

[2] Although the Court of Appeals for the Third Circuit has commented that the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny, it also has made clear that it does not suggest that a reviewing court apply a more stringent standard of review in such cases. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). Rather, "[t]he Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." Id. at 360-61.

[3] Plaintiff does not address the § 404.1520a analysis anywhere in her brief and does not respond in her reply brief to Defendant's discussion of the same.

determines that a claimant's symptoms, signs, and laboratory findings support the existence of a medically determinable impairment, he then must assess the claimant's limitations in four functional areas to determine whether that impairment is "severe." Id. § 404.1520a(b). The four functional areas include: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. Id. § 404.1520a(c). If the ALJ rates the degree of the claimant's limitation in the first three functional areas as "none" or "mild" and as "none" in the fourth area, he generally will conclude that the impairment is not severe unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. Id. In his written decision, the ALJ must incorporate his pertinent findings and conclusions based on this technique, including a specific finding as to the degree of limitation in each of the four functional areas. Id. § 404.1520a(e).

In this case, I agree with Defendant that the ALJ's finding that Plaintiff's depression is not severe is supported by substantial record evidence. As an initial matter, the ALJ properly analyzed Plaintiff's impairment in accordance with the special technique set forth in 20 C.F.R. § 404.1520a. First, the ALJ recognized that Plaintiff was diagnosed with major depression, a medically determinable impairment. (R. 18). He then properly analyzed that impairment in accordance with the special technique outlined above. As required by the regulations, the ALJ summarized Plaintiff's symptoms, signs, and laboratory findings and documented his application of the special technique, including specific findings as to the degree

6

of limitation in each of the four functional areas as a result of Plaintiff's depression. (R. 18-20). In this regard, the ALJ concluded that: (1) Plaintiff had "no" limitation with respect to activities of daily living; (2) Plaintiff had "slight"[4] limitation with respect to social functioning; (3) Plaintiff had "slight" limitation with respect to concentration, persistence, or pace; and (4) there was no evidence of any episodes of decompensation of extended duration. Id. Based on his analysis, the ALJ concluded that Plaintiff's mental impairment was not severe.

The ALJ supported these findings with substantial evidence in the record. For example, with respect to Plaintiff's activities of daily living, the ALJ noted that Plaintiff stated in her daily activities questionnaire that she is able to care for her personal needs, cook, shop, and perform chores such as doing laundry and light house cleaning. (R. 19, 130). Regarding Plaintiff's social functioning, the ALJ pointed to forms Plaintiff completed in which she reported that she had no problems going out in public or getting along with family, friends, or neighbors, and that she was able to visit with family members and friends. (R. 19, 124, 132). He also cited a September 28, 2005 psychiatric evaluation with Dr. Warren Rogers (a treating physician) in which Dr. Rogers, inter alia, described Plaintiff as friendly and cooperative and indicated that Plaintiff had stated that she has some friends and was doing okay socially. (R. 19, 298-300). In the area of concentration, persistence, or pace, the ALJ again pointed to Dr. Rogers' September 2005 evaluation which

---

[4] Although the ALJ used slightly different terminology than that used in the ratings scale set forth in 20 C.F.R. § 404.1520a(c)(4), the terminology is equivalent and does not result in any prejudice to Plaintiff. See Branum v. Barnhart, 385 F.3d 1268, 1272 n.4 (10th Cir. 2004).

states, inter alia, that Plaintiff was alert and oriented in all spheres and that her affect was bright and her speech within normal limits. (R. 19-20, 298-300). The ALJ also noted that Plaintiff reported that she is able to pay her bills. (R. 20, 131).

Finally, the ALJ stated that there was no evidence of any episodes of decompensation of extended duration. (R. 20). The Appendix to the regulations defines "repeated episodes of decompensation, each of extended duration" as three episodes of decompensation within one year, or an average of once every four months, each lasting for at least two weeks. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4).[5] Here, although Plaintiff was hospitalized on two occasions between July 19, 2005 and March 5, 2006 for her depression, neither of these incidents was "of extended duration" because neither lasted for the requisite two weeks.[6]

In her brief, Plaintiff focuses heavily on the fact that she received Global Assessment of Functioning ("GAF") scores of 19, 50, and 20 in July 2005, September 2005, and March 2006, respectively, as evidence that her depression was severe. Pl.'s Br. at 10-14. These GAF scores, however, are not dispositive. The GAF scale is used by clinicians to report an individual's overall level of functioning. See Cainglit v.

---

[5] An "episode of decompensation" is an exacerbation or temporary increase "in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. . . . Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4).

[6] Plaintiff's first mental-health related hospitalization lasted from July 19-25, 2005, and her second hospitalization lasted from March 5-9, 2006.

Barnhart, 85 F. App'x 71, 74-75 (10th Cir. 2003).[7] As other courts have explained, however, a particular GAF score does not necessarily relate to one's ability to work. See, e.g., id. at 75. Here, there is no record evidence that any of Plaintiff's physicians assigned Plaintiff the asserted GAF scores because they perceived Plaintiff as impaired in her ability to work or otherwise placed any restrictions on her ability to work due to her mental health. Absent such evidence, the scores alone do not establish a severe mental impairment. See id.[8] Indeed, aside from Plaintiff's own testimony (about which the ALJ made proper adverse credibility findings), there is no evidence that Plaintiff's mental impairment significantly interfered with her ability to perform basic work activities.[9]

In short, I find that the ALJ complied with the controlling regulations and supported his findings with substantial evidence. For this and all of the above reasons, I find that the ALJ did not err by classifying Plaintiff's depression as non-severe. See, e.g., Sills v. Barnhart, No. 03-4065-JAR, 2004 WL 1293248, at **7-8 (D. Kan.

---

[7] A GAF of 21-30 indicates behavior that is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment . . . OR inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends). See American Psychiatric Assoc. Diagnostic and Statistical Manual of Mental Disorders (4th ed., Text Rev. 2000) ("DSM-IV-TR"). A GAF of 31-40 indicates some impairment in reality testing or communication . . . OR major impairment in several areas such as work or school, family relations, judgment, thinking, or mood. Id. A GAF of 41-50 denotes serious symptoms (e.g., suicidal ideation . . . ) . . . OR any serious impairment in social, occupational, or school functioning. Id. A GAF from 51-60 indicates moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning. Id. A GAF from 61-70 reflects some mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . . , but generally functioning pretty well, has some meaningful relationships. Id.

[8] Plaintiff also received GAF scores of 57 and 62 in this time period, reflecting only moderate or mild limitation. (R. 304-05).

[9] Plaintiff's diagnosis with "major depressive disorder" alone is insufficient to establish severity. See Salles v. Comm'r of Soc. Sec., No. 06-2799, 2007 WL 1827129, at *3 (3d Cir. Jun. 26, 2007).

Jun. 4, 2004).

C.  Whether The ALJ Erred By Failing To Incorporate Any Limitations Related To Plaintiff's Mental Health Impairment In His Hypothetical Question To The Vocational Expert

Plaintiff's second argument is that the ALJ erroneously failed to incorporate any limitations related to her mental health impairment in his hypothetical question to the vocational expert. Plaintiff bases this argument on her prior premise that the ALJ erred in failing to classify her mental impairment as "severe." As set forth above, however, Plaintiff's argument regarding severity is without merit.

It is well-settled that the law only requires the ALJ to include limitations supported by the record in his hypothetical question to the vocational expert. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). Plaintiff does not dispute that the ALJ adequately accounted for her supported physical limitations in his hypothetical question. As explained fully in the preceding section, substantial evidence supports the ALJ's conclusion that Plaintiff did not have any further limitations, including any limitations stemming from her depression.

Because the ALJ properly considered Plaintiff's limitations supported by the record, I find no error on this issue.

### III. CONCLUSION

In sum, based on the evidence of record, the arguments of counsel, and the briefs filed in support of and in opposition thereto, I conclude that the ALJ properly analyzed Plaintiff's claim and that substantial evidence supports the ALJ's finding

that Plaintiff is not disabled within the meaning of the Social Security Act. Accordingly, the ALJ's decision denying Plaintiff's application for disability insurance benefits will be affirmed.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### ORDER OF COURT

AND NOW, this 8th day of August, 2007, after careful consideration, it is ordered that Defendant's Motion for Summary Judgment (Docket No. 12) is GRANTED. Plaintiff's Motion for Summary Judgment (Docket No. 10) is DENIED. Judgment is entered in favor of Defendant and against Plaintiff. This case is "CLOSED" *forthwith*.

BY THE COURT:

*/s/ Donetta W. Ambrose*

Donetta W. Ambrose,
Chief U. S. District Judge

11